Garfield Leichter v. Commissioner. Rose Leichter v. Commissioner.
Leichter v. Commissioner
Docket Nos. 20357, 20358.
United States Tax Court
1950 Tax Ct. Memo LEXIS 121; 9 T.C.M. (CCH) 690; T.C.M. (RIA) 50197; August 15, 1950
*121 Held, there did not exist for income tax purposes during the years involved a valid partnership between petitioners and their minor son. Jules E. Kohn, Esq., 1107 Commerce Bldg., Kansas City 6, Mo., for the petitioners. George E. Gibson, Esq., for the respondent. HILL Memorandum Findings of Fact and Opinion Respondent determined deficiencies in petitioners' income taxes as follows: Docket No.
1943
1944
1945
20357
Garfield Leichter
$2,353.38
$4,030.35
$5,190.59
20358
Rose Leichter
3,549.81
4,605.05
5,481.34
The proceedings *122 were duly consolidated at the hearing. Petitioner, Garfield Leichter, will hereinafter be referred to as petitioner. The only issue is whether petitioners' minor son, Earl, was, for Federal tax purposes, a partner with petitioners in their ladies' ready-to-wear business during the years 1943, 1944 and 1945. Findings of Fact The petitioners are husband and wife and reside in Wichita, Kansas. Their returns for the period involved herein were filed with the collector of internal revenue at Wichita, Kansas. Since 1931 petitioners have been engaged in the ladies' ready-to-wear business in Wichita, owning and operating a highly specialized retail shop known as "Garfield's". The petitioners had two sons. The older son, Erwin, was born in April 1927, and the younger, Earl, was born November 9, 1930. Petitioners had the natural expectation that their sons would come into the business at some time and eventually take over the operation of it. Petitioners began early to identify their sons with the business. In 1937 the foyer of their new store contained the permanent impression of the hands of the father, mother and two sons together with the names of each. This insignia was used in *123 advertising material and on business cards. The initials of petitioners and their sons appeared on the gift seals used by the business. Pictures of the boys, together with those of petitioners, were used in newspaper advertising. In a newspaper advertisement on Easter of 1940, petitioner wrote a letter to his sons expressing his intention and expectation of having them come into the business at some future time. In March 1942 Erwin died. Sometime in 1942 or early 1943 petitioners took Earl to Chicago for an aptitude examination and were advised that he was best fitted for art work and cartooning. This did not fit into petitioners' plans for Earl. They hoped that he would eventually come into the business and wanted his education and training directed toward that end rather than in the art field. From 1939 to June 30, 1943, inclusive, the profits from petitioners' business had been increasing steadily and substantially, and consequently so had the petitioners' income tax liabilities. As of July 1, 1943, the petitioners signed an instrument designated "Assignment" as follows: "The undersigned, Garfield Leichter and Rose (Roslynd) Leichter, of Wichita, Sedgwick County, Kansas, *124 being equal co-owners and partners in the business of selling ladies' ready-to-wear, etc., which business is transacted under the trade name and style of Garfield's at Market and William Streets, Wichita, Sedgwick County, Kansas, do hereby assign, transfer, set over, and deliver to their son, Earl Martin Leichter, an undivided one-third interest in said business, its assets, trade name, and goodwill, and they do each retain and keep an undivided one-third interest. "This assignment, transfer, and gift of a one-third interest in said business known as 'Garfield's' is made without reservation, and is irrevocable. "IN WITNESS WHEREOF, we have executed this instrument this 1st day of July, 1943. (Signed) Garfield Leichter "Garfield Leichter (Signed) Rose Leichter "Rose (Roslynd) Leichter" Petitioners' books of account, which had theretofore reflected a two-way partnership between them, were closed as of June 30, 1943, the capital account showing a closing balance of $95,977.53. As of July 1, 1943, the books were reopened and three capital accounts were set up in the names of Garfield Leichter, Rose Leichter, and Earl Leichter. Each account showed a credit balance of $31,992.51, *125 making a total for the three of $95,977.53. Three drawing accounts were also set up in the names of the parties. With the exception of this change on the books, the business was operated from July 1, 1943, through December 31, 1945, by the two petitioners in the same manner as they had operated it theretofore. In December 1943 petitioner consulted Louis Grieb, the accountant who prepared all of petitioners' income tax returns, relative to the filing of a declaration of his estimated income tax liability. In the course of this consultation Grieb advised him that the alleged partnership agreement should be reduced to writing. Thereafter he consulted Harold Zelinkof, an attorney of Wichita, who made the further suggestion that a legal guardian be appointed for the minor son, Earl. Pursuant to Zelinkof's suggestion, steps were taken to have petitioner Rose Leichter appointed guardian for Earl, and on December 21, 1943, letters of guardianship appointing her "Guardian of the estate of Earl Martin Leichter, a minor person" were issued by the Probate Court of Sedgwick County, Kansas. Among the assets listed in the inventory filed with the Probate Court were: One-third interest in Garfield's
Women's wear, Market and Will-
iam Street, Wichita, Kansas, in-
cluding trade name, good will,
etc.
Irrevocable gift dated July 1, 1943
by Garfield Leichter and Rose
(Roslynd) Leichter, co-partners
and father and mother of said
minor.
$31,992.50
*126 Rose Leichter is still the legal guardian of Earl M. Leichter. Also on December 21, 1943, petitioner and Rose Leichter individually and Rose Leichter as guardian of the estate of Earl M. Leichter, a minor, signed an instrument designated "Partnership Agreement" which had been drafted by Zelinkof. That instrument provided inter alia as follows: "WHEREAS said Garfield Leichter and Rose (Roslynd) Leichter, parents of Earl Martin Leichter, aware of the uncertainties of life, and desiring that their son, Earl Martin Leichter have his own estate, did on the 1st day of July, 1943, give to their son, Earl Martin Leichter, by irrevocable gift and assignment as evidence thereof, a one-third interest in said business known as GARFIELD'S, * * * "WHEREAS said Garfield Leichter and Rose (Rosylnd) Leichter deemed it to the best interests of said son, Earl Martin Leichter, that his estate be administered under the jurisdiction of the Probate Court of Sedgwick County, Kansas, did on the 21st day of December, 1943, petition said Court for the appointment of a Guardian of the estate of Earl Martin Leichter, a minor, and on said day the Court did appoint the said Rose (Roslynd) Leichter as Guardian *127 of the estate of said Earl Martin Leichter, a minor, with the consent of Garfield Leichter and said Rose (Roslynd) Leichter did then and there qualify as said Guardian and * * *
"NOW THEREFORE, GARFIELD LEICHTER, ROSE (ROSLYND) LEICHTER, and ROSE (ROSLYND) LEICHTER, GUARDIAN of the Estate of EARL MARTIN LEICHTER, a Minor, mutually agree * * * * * *
"MANAGEMENT AND CONTROL: The management of said partnership shall at all times be vested equally in each of said partners. (a) It is mutually agreed that Garfield Leichter and Rose (Roslynd) Leichter are to receive the sum of $500 respectively, per month, or such other amounts as shall be agreed upon, for their services in said business, during the minority of their minor son, Earl Martin Leichter, and said Earl Martin Leichter shall receive for his services in said business, actually performed, an amount, to be agreed upon, commensurate with his experience and service rendered. It being understood and agreed that as said Earl Martin Leichter grows older his services will be enhanced in value. (b) It is further agreed that the profits, if any, after deducting all operating expenses, including salaries, a depreciation *128 reserve, and tax reserve, if any, is to be divided equally among said three partners, Garfield Leichter, Rose (Roslynd) Leichter and Rose (Roslynd) Leichter, Guardian of the Estate of Earl Martin Leichter, a minor, and after his minority, with him as one handling his own affairs." * * *
On July 1, 1943, Earl was 12 years old. During that year he was in his last year of grade school at Wichita. During the next two years, 1944 and 1945, he was in his first two years of high school at Pembroke Country Day School, Kansas City, Missouri. At the time of the hearing he was in his senior high school year at the latter school. Upon graduation he intended to enter New York University School of Retailing for a 2 to 4-year course. During the period July 1, 1943, to December 31, 1945, no amount was paid to Earl for services by Garfield's. He did not work at the store, but went there during vacation and was introduced to customers. He accompanied his parents on several buying trips to New York. He observed the advertisements of several stores in the Kansas City and Wichita newspapers, and sometimes sent advertisements which interested him to his parents with notations. He read some articles *129 on store management and advertising and display. All of this was done with the idea of preparing himself to work at Garfield's in the future when he had completed his education. It was the intention of petitioners and their son, Earl, that the latter would "come into the business" when he had completed his college training. The petitioners did not really and truly intend to join together with their minor son in the present conduct of their ready-to-wear business known as "Garfield's" during the taxable periods involved. Opinion HILL, Judge: Our ultimate finding of fact that the petitioners did not really and truly intend to join together with their minor son in the present conduct of Garfield's during the taxable years involved disposes of the only question before us. That finding was based upon the following considerations. The Supreme Court in , stated that in cases of the type before us the basic question is "* * * whether, considering all the facts - the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their *130 respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent - the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise." The Supreme Court also said: "* * * The intent to provide money, goods, labor, or skill sometime in the future cannot meet the demands of §§ 11 and 22 (a) of the Code that he who presently earns the income through his own labor and skill and the utilization of his own capital be taxed therefor. The vagaries of human experience preclude reliance upon even good faith intent as to future conduct as a basis for the present taxation of income." An examination of all the facts here point irresistibly to the conclusion that Earl was to become associated with the firm as a partner at some date in the future and that he was not to enter into the present conduct of the business during the taxable periods involved. There was no change, except by way of book entries, in the way in which the business was conducted after the formation of the alleged partnership between petitioners and Earl on *131 July 1, 1943. Earl contributed little or no services to the business during any of the years in question. On July 1, 1943, the date of the signing of the agreement, Earl was only 12 years old and in his last year of grade school. During 1944 and 1945, the other two years in question, Earl was in his first and second years of high school in Kansas City, Missouri, and at the time of the hearing he was in his last year of high school. He testified that upon graduation from high school he intended to enter New York University School of Retailing for a 2 or 4-year course and that at the completion thereof he intended to work at Garfield's. The agreement itself shows that the petitioners anticipated little or no services from Earl. It provided that petitioners were to receive $500, respectively, per month, or such other amounts as agreed upon for their services and that Earl would receive an amount to be agreed upon commensurate with his experience and services rendered. The agreement further stated that it was understood that Earl's services will be enhanced in value as he grows older. So far as the record shows Earl was paid nothing during the years in question. That petitioner did *132 not intend that his son was to join in the present conduct of the business is established by the following testimony: "Q. Mr. Leichter, was it your intention - Do I understand you to have testified you intend that at the completion of his schooling Buddy would come into your business? "A. Yes, sir. "Q. What school is he in now? "A. Pembroke Country Day School. "Q. What year is it for him? "A. Senior year. "Q. In high school? "A. High school; that is right. "Q. Where is he going to college next year? "A. He is planning on going to NYU's school of retailing. "Q. Is it your and his intention he will come into the business at the completion of his college training? "A. Yes, sir." Petitioner Rose Leichter's testimony was to the same effect. In addition, petitioner's son had no dominion or control over the share of the partnership capital standing in his name, nor in any of its profits. Petitioner Rose Leichter, as legal guardian, exercised complete control over such property. Neither did Earl participate in any management or control of the business. His role in the firm was one only of passive acquiescence to the will of the petitioners. In , *133 affirmed , we said: "Petitioner in the instant case may have expected that his sons would eventually take over and run the business, as do fathers in many businesses. But the fact remains that the sons did not actually render services during the taxable years in question which would make them partners in a tax sense. Actually, the war did not affect the younger son's capacity to contribute services to the partnership at all during those years, 1942 and 1943, since he was not in the Navy until 1944; and the older son did not enter the Navy until mid-1943. Moreover, in view of petitioner's undoubted motive of tax-saving in setting up the partnership when he did, and in views of the extreme youth even of the older son and of the fact that the father was only thirty-nine at the time of the formation of the partnership, and in view of the experience and dominant role of the father in the business, it is highly doubtful whether the older son would have rendered such services during the latter half of 1943 even if a war had not intervened." See also , , certiorari *134 denied . It follows that respondent's determination must be sustained. Decisions will be entered for respondent.